UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
CIVIL FILE NO.: 10-cv-00333 ADM/JJK

| | |
|---|---|
| Sonya Baker,<br><br>　　　　　　Plaintiff,<br>v.<br><br>Springer, Inc.,<br><br>　　　　　　Defendant. | **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS OR SUMMARY JUDGMENT** |

## INTRODUCTION

The facts of this Fair Debt Collection Practices Act ("FDCPA") case are relatively simple and undisputed. Plaintiff Sonya Baker ("Plaintiff") incurred a consumer debt for child care services. Due to a dispute over the balance, the debt went unpaid and was forwarded to a collection agency, Defendant Springer, Inc. ("Defendant"). In the course of its attempt to collect, Defendant telephoned Plaintiff's former boyfriend and disclosed the existence of the debt to him. Plaintiff filed suit alleging this contact with her former boyfriend, Sean Anderson, who is the father of her child, violated the FDCPA's third party provisions prohibiting such contact.

What is irregular about this case is the underhanded and dubious manner in which Defendant and its attorney attempted to dispose of Plaintiff's FDCPA claims after they were brought to their attention by Plaintiff's attorney. A complete and accurate summary of what transpired in the course of attempting to collect the disputed debt as well as the attorney's purposeful and questionable actions reveal that Plaintiff's claims were not

1

released in the agreement to settle the underlying account, and that Defendant's contact with Anderson violated the explicit third party provision in the FDCPA prohibiting such contacts.  Accordingly, Defendant's motion should be denied in its entirety.

## FACTS

### *Plaintiff Alone Incurs an Alleged Debt with KLT Kids*

Prior to May 2008, Plaintiff allegedly incurred a "consumer debt," as that term is defined by 15 U.S.C. §1692a(5), with KLT Kids at St. Matthews (hereinafter referred to as "KLT Kids") for child care. *See Doc. No. 1, Verified Complaint, at ¶5.*  At the time Plaintiff signed the contact for services with KLT Kids she agreed to be the sole financially responsible party. *See Roy Aff. ¶2, Ex. 1.*

### *The Alleged Debt is Placed with Defendant Springer*

At some point, Plaintiff allegedly defaulted on the debt owed to KLT Kids and it was placed with Defendant for collection.  Defendant then began its collection efforts, which included the sending of letters, telephone calls and voice messages.  *See Doc. No. 1 at ¶¶6-8.*

### *Defendant Telephones a Third Party and Discloses the Debt*

Despite having Plaintiff's personal information, including her phone number and mailing address, in or about May 2009, Defendant's agent "Jackie" called Plaintiff's former boyfriend, Sean Anderson who is the father of her child, with regard to the alleged debt.  During the conversation with Anderson, Defendant's agent specifically disclosed the existence of the alleged debt and falsely stated that Defendant did not have a way to get in touch with Plaintiff.  Never at any time did Plaintiff authorize Defendant to

communicate with any third parties, including Anderson. Because of Defendant's actions, Plaintiff's former boyfriend was made aware of the existence of the alleged debt owed by Plaintiff. *See Verified Complaint at ¶¶9-12.* At no time prior to this contact was Anderson contacted by either KLT Kids or any other entity about this debt.

### *The Creditor Retains an Attorney and Sues Baker*

On October 12, 2009, KLT's attorney, Richard Muske, sent an initial collection communication to Plaintiff stating that he represented KLT Kids. *See Roy Aff. ¶3, Ex. 2.* Thereafter, in December 2009, KLT Kids, through Attorney Muske, sued Plaintiff individually in Ramsey County for the unpaid child care debt. Sean Anderson was not named as a Defendant or co-obligor in the collection suit. *See Roy Aff. ¶4, Ex. 3.*

### *Attorney Muske Receives Notice of Plaintiff's FDCPA Claims*

On January 18, 2010 Plaintiff's counsel sent Attorney Muske a letter advising that Consumer Justice Center had been retained to pursue alleged illegal collection activity engaged in by Defendant Springer. Plaintiff's counsel enclosed a copy of the draft complaint Plaintiff intended to file and serve which summarized Plaintiff's FDCPA claims and the facts supporting those claims. *See Roy Aff. ¶5, Ex. 4.* On January 25, 2010, however, Attorney Muske responded with correspondence denying that he represented Defendant Springer.[1] *See Roy Aff. ¶6, Ex. 5.*

---

[1] Attorney Muske's representation to Plaintiff's counsel was false and deceptive as Defendant's collection notes indicate Muske was working with Springer directly in an effort to get rid of Plaintiff's FDCPA claims following her offer to Muske to settle the account with KLT Kids. *See Doc. No. 17-1 at pages 2-3.*

*Plaintiff Files Suit Against Defendant Springer*

Plaintiff sued Defendant Springer on February 5, 2010 by filing a complaint in the United States District Court – District of Minnesota. Therein, Plaintiff alleged: 1) she alone incurred a consumer debt for child care; 2) Anderson had been contacted by Defendant in connection with the debt; 3) Plaintiff did not authorize Defendant to communicate with Anderson or any other third parties; and 4) Defendant's communication with Anderson violated 15 U.S.C. §§ 1692b(2), 1692c(b), 1692d, 1692f, 1692e, and 1692e(10).

*Plaintiff Settles the Underlying Account with the Creditor's Attorney*

On or about February 5, 2010, Plaintiff sent a letter to KLT's attorney, Richard Muske, in response to the state court collection action brought by KLT Kids. Therein, Plaintiff explained her dispute over the amount of the debt and offered to settle her account for a total of $250 and modification of her credit report. No mention of the pending federal action or her claims against the collector, Defendant Springer, was made in her offer to settle. *See Roy Aff. ¶7, Ex. 6.*

On February 15, 2010, after Plaintiff's federal action against Defendant had been filed, Attorney Muske sent Plaintiff a letter accepting her proposal and offer to settle the account with KLT Kids, stating "I am pleased to inform you that your offer of $250 <u>to resolve the account</u> has been accepted." (emphasis added). Attorney Muske also provided a Release for Plaintiff to sign and return.[2] *See Roy Aff. ¶8, Ex. 7.* As stated

---

[2] No mention of Defendant Springer or Plaintiff's FDCPA claims was included anywhere within Attorney Muske's acceptance letter, nor the Release provided by him.

explicitly therein, "the purpose of the Release is to set forth the release of all claims and obligations between the Parties with regard to any contracts entered into and/or services provided to Sonja Baker arising out of her account with KLT Kids School Age Care." The Release goes on to state that the "Parties do mutually herein forever release and discharge the other party, <u>their attorney's, agents, successors and assigns from all accounts and obligations to KLT Kids School Age Care, now and hereafter, arising out of or in any way connected with KLT Kids School Age Care.</u>" There is no reference to "claims," "rights," or any other items subject to release.

Plaintiff sent Attorney Muske a check dated February 17, 2010 in the amount of $250 payable to KLT Kids and signed the mutual release to resolve her account with KLT Kids. *See Roy Aff. ¶9, Ex. 8.* Upon information and belief, either Defendant or Attorney Muske sent the Plaintiff's check to Defendant Springer, as the back of the settlement check to KLT Kids has Springer's for deposit only stamp. Defendant Springer then sent to Plaintiff directly a receipt for the payment dated February 26, 2010. *See Roy Aff. ¶10, Ex. 9.*[3] Then, after the underlying debt was resolved, Attorney Muske, who previously represented to Plaintiff's counsel that he did not represent Springer, sent Plaintiff's counsel a letter claiming Plaintiff had released Defendant Springer as part of her settlement of the account with KLT Kids. *Roy Aff. ¶11, Ex. 10.*

---

[3] Despite the settlement in full of the underlying KLT Kids debt and Defendant's argument that the Release extinguished all claims between Plaintiff and Defendant, the receipt sent to Plaintiff shows Defendant has not updated her account as paid in full and there appears to be a balance of $330.73 still outstanding reflected in its records.

## ARGUMENT

I.   **LEGAL STANDARD**

**A. Federal Rule of Civil Procedure 12(c): Judgment on the Pleadings**

Motions for judgment on the pleadings are resolved pursuant to Federal Rule of Civil Procedure 12(c) under the same standards as a Rule 12(b)(6). *See UltiMed, Inc. v. Becton, Dickinson and Co.*, 2007 WL 128834 *1 (D.Minn.), *citing Wescott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir.1990).  Accordingly, the Court should review only the pleadings, assume all facts alleged in the complaint are true, construe the complaint liberally in the light most favorable to the plaintiff, and enter judgment on the pleadings only if it appears *beyond a doubt* that the plaintiff can prove no set of facts that would merit relief.  *Id., citing Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir.1994), and *Pinnacle Pizza Co. v. Little Caesar Enters., Inc.*, 395 F.Supp.2d 891, 896-97 (D.S.D.2005).  Judgment on the pleadings should be granted only "sparingly and with caution." *Huelsman v. Civic Ctr.Corp.*, 873 F.2d 1171, 1174 (8th Cir.1989).

Rule 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Thus, because Defendant has presented matters outside the pleadings, its motion should be treated as one for summary judgment.

**B. Federal Rule of Civil Procedure 56(b): Summary Judgment**

In moving for summary judgment, Defendant must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." Fed.R.Civ.P. 56(c). If the moving party satisfies its burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In considering a motion for summary judgment, the Court "must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the non-moving party." *Winthrop Res. Corp. v. Eaton Hydraulics, Inc.*, 361 F.3d 465, 468 (8th Cir.2004).

    **II.    DEFENDANT'S MOTION SHOULD BE DENIED BECAUSE THE RELEASE WAS LIMITED TO RESOLVING THE SUBJECT DEBT.**

Plaintiff does not dispute that she voluntarily settled her account with KLT Kids after she was sued by Attorney Muske on KLT Kids' behalf. However, her agreement with KLT Kids to settle the underlying but disputed account in no way relinquished her wholly separate legal claims pending against Defendant Springer, who was not a party to the agreement.

    **A. Defendant does not fall under the description of the released parties.**

Defendant argues that it was an agent of KLT Kids, and therefore it was released. However, the language of the Release between Plaintiff and KLT Kids indicates that the Parties (defined earlier as Baker and KLT Kids) discharge each other and their "<u>attorney's</u>" agents,[4] not agents of KLT Kids. There is nothing supporting the notion that

---

[4] Again, the language reads "…the Parties do mutually herein forever release and discharge the other party, their attorney's, agents…."

7

Defendant was an agent of Attorney Muske and therefore Defendant was not released as an agent under the terms of the Release.

### B. Plaintiff's federal legal claims are not covered by the Release.

There is no dispute that Defendant was aware of Plaintiff's FDCPA claims and that she had retained counsel in connection therewith prior to settling her account with KLT Kids. There is also no dispute that Attorney Muske, who claimed he did not represent Springer, was well-aware of those same legal claims when he accepted Plaintiff's offer to settle the account and thereafter induced her to sign a written Release. Moreover, there can be no dispute that as of the date the Parties signed the Release, Plaintiff's federal lawsuit was pending and that regardless of all of the foregoing, neither Springer nor the federal suit or claims against it was included or mentioned in the Release. The question becomes, then, one of interpretation and whether Plaintiff's legal claims are covered by the Release.

The construction of the Release with regard to Plaintiff's claims is a matter of federal law. *Dice v. Akron, Canton & Youngstown R. Co.*, 342 U.S. 359, 361 (1952). In construing any contract, the Court must give all terms their plain, ordinary and popular meaning so as to effect the intent of the parties. *Ostendorf v. Arrow Insurance Company,* 288 Minn. 491, 495, 182 N.W.2d 190, 192 (1970). The parties' intent should be determined, "not by a process of dissection in which words or phrases are isolated from their context, but rather from a process of synthesis in which words and phrases are given

---

In the alternative, if the Court finds that the definition of agents is uncertain or ambiguous, then the parties' intent needs to be examined. This shall be addressed later in this memorandum.

a meaning in accordance with the obvious purpose of the contract as a whole." *Cement, Sand & Gravel Co. v. Agricultural Ins. Co.,* 225 Minn. 211, 216, 30 N.W.2d 341, 345 (1947) (quoted in *Republic National Life Insurance Co. v. Lorraine Realty Corp.,* 279 N.W.2d 349, 354 (Minn.1979), *reh'g denied* (May 31, 1979)). *See also, Boe v. Christlieb,* 399 N.W.2d 131, 133 (Minn.Ct.App.1987).

The Release relied upon Defendant in this case purports to discharge or release the Parties from "all <u>accounts and obligations</u> to KLT Kids School Age Care, now and hereafter, arising out of or in any way connected with KLT Kids School Age Care."[5] The terms "accounts" and "obligations" are not ambiguous terms and should be given their ordinary meaning. Since Plaintiff's federal lawsuit and claims therein do not meet the plain meaning of "accounts" or "obligations," they are not covered by the Release.

In the alternative, if either of the two terms is determined to be ambiguous, then the Court may look to the Parties' intent and the purpose of the contract as a whole. Clearly, Plaintiff's intent was to respond to the state action brought by KLT Kids, resolve her outstanding account with KLT Kids, and fix her credit report. There was no intent on her part to release her separate claims against the debt collector, whom she had filed a federal action against. Plaintiff viewed her account dispute with KLT Kids and the FDCPA claims against Springer as entirely separate matters, as did Attorney Muske, who represented to Plaintiff and her counsel that he did not represent Springer in connection

---

[5] Curiously, nowhere does the Release mention or refer to anything such as "claims," "lawsuits," or "rights" like the agreements cited to by Defendant in its supporting memorandum. Accordingly, the cases cited by and relied upon by Defendant are not instructive or persuasive.

with her FDCPA claims brought to his attention in the January 18, 2010 letter from Plaintiff's counsel. Moreover, the Release provided by Attorney Muske on behalf of KLT Kids was presumably drafted by him – it was certainly not drafted by Plaintiff. If the Parties' intent was to dispose of the pending federal FDCPA claims against Springer, it would have made sense for the attorney-drafter to have explicitly stated such or at the very least included some language about legal claims generally. *See, for example, Sibersky v. Borah, Goldstein, Altschuler & Schwartz, P.C.,* 2000 WL 1448635 *4 (S.D.N.Y.) (finding the plaintiff's FDCPA claims were not subject to dismissal based upon a signed stipulation where the pending federal action had not been mentioned in the stipulation and that the term "agents" was ambiguous without specific reference to the defendant attorneys). However, Attorney Muske failed to include any reference, specific or general, about legal claims altogether, and that combined with Plaintiff's offer to settle letter, in addition to all of the circumstances clearly establishes there was no intent to release Springer or Plaintiff's FDCPA claims. The Release accomplished resolution of Plaintiff's account with KLT Kids – nothing more and nothing less. Accordingly, Defendant's motion should be denied.

### III. DEFENDANT'S MOTION SHOULD BE DENIED BECAUSE DEFENDANT ADMITS COMMUNICATING WITH A THIRD PARTY IN CONNECTION WITH PLAINTIFF'S DEBT.

Defendant does not dispute that it contacted Anderson in connection with the KLT Kids debt or that it disclosed the existence of Plaintiff's debt to Anderson. Instead, Defendant makes the wholly unsupported argument that Anderson was a "co-obligor" on the debt and therefore the communication and disclosure to him did not violate the

FDCPA. Defendant's characterization and legal conclusion is meritless and fails for a number of reasons.

Defendant, in its supporting memorandum, moves back and forth between characterizing Anderson as a "co-obligor" and "co-sponsor" as if the terms are synonyms and/or may be used interchangeably. One is a recognized and commonly-used legal term while the other is an undefined label utilized by KLT Kids on some of its forms. Notably, however, "co-obligor" is nowhere to be seen in any of the KLT Kids forms, contract, or the evidence submitted by Defendant in support of its Motion.

The FDPA is very specific as to permissible communications with persons other than the consumer who owes or is alleged to owe the subject debt. Under Section 1692b, commonly referred to as the "safe harbor" provision, a debt collector may communicate with "any person other than the consumer ... for the purpose of acquiring location information about the consumer." *15 U.S.C. § 1692b.* Location information is defined as "a consumer's place of abode and his telephone number at such place, or his place of employment." *15 U.S.C. § 1692a(7).*[6] In obtaining location information, however, the debt collector may not state the consumer owes any debt in connection with seeking location information. *15 U.S.C. § 1692b(2).*[7]

---

[6] It does not appear that Defendant is arguing its conduct was appropriate under the "safe harbor" provision governing appropriate or allowable contacts to third parties seeking location information.

[7] To be clear, a debt collector may violate Section 1692c(b) in communicating with a third party, even absent a disclosure of the debt. *See, for example, West v. Nationwide Credit, Inc.*, 998 F.Supp. 642, 643-44 (W.D.N.C.1998) (denying motion to dismiss on claim against debt collector who contacted consumer's neighbor in connection with the

Meanwhile, Section 1692c(b) specifically gives an exhaustive list of third parties that may be contacted in connection with a debt:

> without the prior consent of the consumer given directly to the debt collector…a debt collector may not communicate, in connection with the collection of any debt, with any person other than a consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

*See 15 U.S.C. § 1692c(b).* Clearly, an ex-boyfriend and/or the father of a consumer's child is not listed anywhere within the list of parties who may be contacted in connection with the consumer's debt.

Regardless, Defendant appears to argue that based upon the nature or type of debt involved in this case, Anderson was somehow legally a co-obligor on the debt, despite the fact that he never signed any contract and Plaintiff alone was specifically listed as the "Financially Responsible Person" on the Enrollment Contract she signed with KLT Kids that created the subject debt. While Plaintiff does not dispute that a father generally has a moral and perhaps legal obligation to care for his child, there is absolutely no support for Defendant's position that Anderson is or was liable at any time for the subject debt in this case. Defendant has failed to provide even a single case or the alleged Minnesota law

---

collection of a debt but did not disclose the existence of a debt), *citing Senate Report No. 95-382*, which states that:

> [o]ther than to obtain location information, a debt collector may not contact third persons such as a consumer's friends, neighbors, relatives, or employer. Such contacts are not legitimate collection practices and result in serious invasions of privacy, as well as the loss of jobs.

S. Rep. No. 95-382, reprinted at 1977 U.S.Code & Admin. News 1695, 1699.

stating otherwise.  Moreover, Defendant's own collection conduct does not support its legal contention that Anderson is and/or was a co-obligor on the debt – its collection letters were addressed to Plaintiff alone and, curiously, Plaintiff was the only party sued to collect the debt.

## CONCLUSION

Since the Release was limited to resolving the underlying debt with the creditor, KLT Kids, and Defendant's position that Sean Anderson was a co-obligor is without any legal support whatsoever, Defendant's motion should be dismissed in its entirety.

Dated this 13th day of October, 2010.          Respectfully submitted,


By: s/ Trista M. Roy

**CONSUMER JUSTICE CENTER, P.A.**
Thomas J. Lyons
Attorney I.D. #65699
Trista M. Roy
Attorney I.D. #0387737
367 Commerce Court
Vadnais Heights, MN 55127
Telephone:  (651) 770-9707
Facsimile: (651) 704-0907

*ATTORNEYS FOR PLAINTIFF*