UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____  Court File No. 10-CV-333 ADM/JJK

Sonja Baker,

    Plaintiff,

v.

Springer, Inc.,

    Defendant.

---

**DEFENDANT'S SUBSTITUTED MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS, OR
IN THE ALTERATIVE, MOTION FOR SUMMARY JUDGMENT**

---

## INTRODUCTION

The fundamental premise of Plaintiff Sonja Baker's claim against Defendant Springer, Inc., ("Springer") is that Springer's contact with Sean Anderson, the father of her child, was an impermissible contact with a third party in violation of the Fair Debt Collection Practices Act ("FDCPA"). However, Ms. Baker conveniently overlooks the fact that she initiated the settlement of the underlying debt and executed a Mutual Release that released KLT Kids School Age Care ("KLT") and its agents, including Springer. Since the claims were released, Ms. Baker's Complaint against Springer, as the agent for KLT, should be dismissed pursuant to Rule 12(c). In the alternative, Springer seeks summary judgment against Ms. Baker based upon the Mutual Release and undisputable

fact that Springer's contact with Mr. Anderson was not a prohibited contact because he was a co-obligor of the underlying debt owed to KLT.

## FACTUAL BACKGROUND

### I.   PROCEDURAL POSTURE

On February 5, 2010, Sonja Baker commenced this action through the filing of the Summons and Complaint in the United States District Court of Minnesota. On or about March 3, 2010, Springer was served with the Summons and Complaint. In the Complaint, Ms. Baker asserts that Springer violated the FDCPA when it contacted Sean Anderson, the father of Ms. Baker's son, in an attempt to collect the debt owed to KLT for his son's daycare costs. Springer filed its Answer on April 29, 2010.[1]

### II.   STATEMENT OF UNDISPUTED FACTS[2]

Ms. Baker incurred a "consumer debt," as that term is defined in 15 U.S.C. § 1692a(5), with KLT after Ms. Baker failed to pay for the daycare services of her son, C.A.. (See Complaint ¶ 5). The debt was thereafter placed with Springer by KLT for collection as its agent. (See Complaint ¶ 6). Springer contacted Ms. Baker and C.A.'s father, Sean Anderson, in an attempt to collect the delinquent debt, based upon the records it was provided by KLT. (See Complaint ¶¶ 9-10).

---

[1] By Order dated July 14, 2010, Springer, Inc. was substituted as the proper party Defendant based on the Stipulation of the parties.

[2] The facts alleged in the Complaint that are contained in this Statement of Undisputed Facts may be assumed by the Court for the purposes of this motion only.

On February 17, 2010, Ms. Baker settled her debt with KLT Kids School Age Care for $250.00. (See Answer, Ex. 1). Pursuant to this settlement, KLT Kids School Age Care and Ms. Baker entered into a "Mutual Release," the stated purpose of which was:

> to set forth the release of all claims and obligations between the Parties with regard to any contracts entered into and/or services provided to Sonja Baker arising out of her account with KLT Kids School Age Care.

(See Answer, Ex. 1). The pertinent part of the Mutual Release states:

> For valuable consideration, the sum of $250.00, to be paid by Sonja Baker to KLT Kids School Age Care contemporaneously herewith, the Parties do mutually herein forever release and discharge the other party, their attorney's, agents, successors and assigns from all accounts and obligations to KLT Kids School Age Care, now and hereafter, arising out of or in any way connected with KLT Kids School Age Care.

(See Answer, Ex. 1).

In the Complaint, Ms. Baker alleges that Springer violated the FDCPA when it contacted Mr. Anderson with regard to the alleged debt owed. (See Complaint ¶ 9-10).

The information provided by KLT Kids when the account was placed with Springer identified Mr. Anderson as a "CoSponsor" on the account for the child care provided for C.A.. (Affidavit of Steven T. Hannig ("Hannig Aff."), Exhibit A at SC0007). KLT also provided Mr. Anderson's contact information and telephone number for the account. (Hannig Aff. at ¶ 3, Exhibit A at SC0007).

3

Springer had no information indicating that Mr. Anderson was not responsible for the outstanding debt when the calls on the account were placed to him on July 12, 2009. (Hannig Aff. at ¶ 4). Instead, the information from KLT Kids indicated that he was a co-obligor on the account. (Hannig Aff. at ¶ 4).

## ARGUMENT

**I.   MS. BAKER'S COMPLAINT AGAINST SPRINGER SHOULD BE DISMISSED AS A MATTER OF LAW.**

**A.   Springer is Entitled to Judgment on the Pleadings Under Fed. R. Civ. 12(c) on the Basis that Ms. Baker Released the Claims in the Complaint When She Signed the Mutual Release.**

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The obvious purpose of Rule 12(c) of the Rules of Civil Procedure is to save time and expense in cases wherein the ultimate facts are not in dispute. Ulen Contracting Corp. v. Tri-County Electric Co-op, 1 F.R.D. 284, 285 (W.D.Mich. 194). A party is entitled to judgment on the pleadings under Fed. R. Civ. P. 12(c) if the movant establishes that no material issue of fact remains and that he is entitled to judgment as a matter of law. Iowa Beef Processors, Inc. v. Amalgamated Meat Cutters & Butcher Workmen of North America, 627 F.2d 853, 855 (8th Cir. 1980). "An issue of fact is deemed to be material if the outcome of the case might be altered by its resolution one way rather than another." Id. However, the Court can take judicial notice of facts in ruling on a Fed.R.Civ.P. 12(c) motion. Senart v. Mobay Chemical Corp., 597 F.Supp. 502, fn. 9 (D.Minn. 1984).

Springer is entitled to judgment on the pleadings pursuant to Fed. R. Evid. 12(c) as a matter of law because the Mutual Release released Springer, as KLT's agent, from all liability on Ms. Baker's claims. Ms. Baker cannot dispute that she entered into a Mutual Release with KLT. (See Answer, Ex. 1). "The law encourages the settlement of disputes, and releases are generally presumed valid." Riverview Muir Duran, LLC v. JADT Dev. Group, LLC, 776 N.W.2d 172, 176 (Minn. Ct. App. 2009); see also Myers v. Fecker Co., 312 Minn. 469, 252 N.W.2d 595, 599 (1977) ("It is a basic premise that settlement of disputed claims is to be favored"). A valid release is a defense to any action on a claim released. Goldberger v. Kaplan, Strangis & Kaplan, P.A., 534 N.W.2d 734, 737 (Minn. Ct. App. 1995).

The law "presumes that parties to a release agreement intend what is expressed in a signed writing." Riverview Muir Duran, LLC, 776 N.W.2d at 176. "Whether a release was intended to cover an unknown claim becomes a question of law when the evidence of the release's finality is conclusive." Goldberger, 534 N.W.2d at 737. Also, a general release of one tortfeasor releases all others if the settlement agreement manifests such intent. Luxenburg v. Can-Tex Indus., 257 N.W.2d 804, 807-08 (Minn. 1977).

In Shaffer v. JNR Adjustment, 2002 WL 31866276 (D.Minn. Dec. 19, 2002), the plaintiff wrote three bad checks to McDonald's. McDonald's referred the checks to a debt collection company for collection. Id. at *1. The debt collectors then sent the plaintiff a letter in an attempt to collect. Id. Counsel for plaintiff responded alleging

5

violations of the FDCPA and sent the debt collectors a draft complaint and demand letter. Id. Ultimately, the debt collectors and the plaintiff settled the claims and entered into a release and confidentiality agreement. Id.

In the release agreement, the plaintiff released "any and all claims that [the plaintiff] ever had or now has, against Released Parties by reason of any matter or thing arising out of or in connection with the transactions, allegations, claims and demands, whether asserted or unasserted, set forth in the claim, or arising out of or in connection with the factual circumstances described in the claim." Id. Subsequently, the plaintiff filed two civil complaints against the debt collectors alleging violations of the FDCPA. Id. at *2. The court held that the plaintiff's claims are barred by the release agreement, stating:

> the release language is not limited to potential claims arising out of the specific factual predicate of the draft complaint or to the specific claims made in the demand letter. Rather, the release language specifically applies to any potential claims arising in connection with the legal claims made in the draft complaint. The claims raised in these two lawsuits clearly and unambiguously fall within the ambit of the release language.

Id.

Similarly, in Van Hee v. Haala, 2010 WL 1192031 (Minn. Ct. App. March 30, 2010), the buyer of a home sued the seller for fraud and misrepresentation. However, after purchasing the home, the buyer signed a release that stated: "Parties acknowledge that the above price is a complete settlement for sale of the above property and both

6

parties waive any right or claim as a result of the sale between parties on September 6, 2002, and the sale herein." Id. at *1. The buyer argued that this release did not release the seller from "other attendant tort claims antecedent to or surrounding the sale." Id. at *2. The Court of Appeals held:

> The release plainly states that "both parties waive any right or claim as a result of the sale between parties on September 6, 2002." This release language is not vague, and broadly bars any claims resulting from the September 2002 sale. The district court correctly concluded that this language is clear and works as a release of any claim resulting from the 2002 sale, barring [the buyer's] fraud and misrepresentation claims asserted against [the seller].

Id. at *2.

Here, the stated purpose of the Mutual Release was to "set forth the release of all claims and obligations between the Parties . . . arising out of her account with KLT Kids School Age Care." (See Answer, Ex. 1). Thus, Ms. Baker cannot dispute that she intended to release all claims arising out of her debt with KLT. See Riverview Muir Duran, LLC, 776 N.W.2d at 176. Moreover, the Mutual Release released "[KLT], their attorney's, agents, successors and assigns from all accounts and obligations to KLT Kids School Age Care, now and hereafter, arising out of or in any way connected with KLT Kids School Age Care." (Id.) (emphasis added). Springer is an agent of KLT, thus bringing Springer squarely within the Mutual Release. See State ex rel. Southwell v. Chamberland, 361 N.W.2d 814, 818 (Minn. 1985) (valid assignment generally vests in

assignee same right, title, or interest that assignor had in property assigned); (See Complaint ¶ 6).

Ms. Baker's claims stated in the Complaint "arise out of [Ms. Baker's] account with KLT Kids School Age Care" in that they arise out of the attempted collection of the debt owed on her account with KLT Kids School Age Care. (See Complaint ¶ 5-12; Answer, Ex. 1).  However, Ms. Baker expressly released Springer from liability on these claims because the validly executed Mutual Release states that Ms. Baker releases all agents and assigns "from all accounts and obligations to KLT Kids School Age Care, now and hereafter, arising out of or in any way connected with KLT Kids School Age Care." (See Answer, Ex.1).  The plain language of the Mutual Release bars Ms. Baker's claims against Springer.  Therefore, Springer is entitled to judgment on the pleadings as a matter of law, and Baker's Complaint should be dismissed with prejudice.

    **B.**    **In the Alternative, Springer is Entitled to Summary Judgment under Fed. R. Civ. P. 56 Because Mr. Anderson is a Co-Obligor and It Was Permissible for Springer to Contact Him Regarding the Child Care Debt of His Son.**

In the alternative, Ms. Baker's Complaint should also be dismissed on Springer's Motion for Summary Judgment.  Rule 12(d) of the Federal Rules of Civil Procedure provides that if matters outside the complaint are presented by a party moving for dismissal under Rule 12(b)(6) or 12(c), the motion may be converted to a motion for summary judgment under Rule 56.  Rule 12(d) states:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgement under Rule 56. All parties must be given reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. Proc. 12(d).

Rule 56(b) of the Federal Rules of Civil Procedure provides that "[a] party against whom relief is sought may move, with or without supporting affidavits, for summary judgment on all or part of the claim." Fed. R. Civ. P. 56(b). Summary judgment is not properly regarded as a disfavored procedural shortcut, but, rather, as an integral part of the Federal Rules as a whole. See Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

When deciding a summary judgment motion, the court's function is not to resolve issues of material fact, but to determine whether there are any such issues to be tried. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A motion for summary judgment is properly granted if the nonmoving party is unable to show a genuine issue of material fact as to the underlying claim. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986). All evidence and inferences are to be viewed in a light most favorable to the non-moving party. Anderson v. Lib. Lobby, Inc., 477 U.S. 242, 252 (1986). Springer is entitled to summary judgment because Ms. Baker cannot show that Springer's contact with Mr. Anderson was a violation of the FDCPA as a matter of law.

Mr. Anderson was a co-obligor of the debt that Springer was attempting to recover. It cannot be disputed that Mr. Anderson was listed as C.A.'s father and co-sponsor in the records of KLT. When KLT retained Springer to collect the debt due and owing for C.A.'s day care charges, it provided Springer with records showing Mr. Anderson listed as C.A.'s biological father and co-sponsor. (Hannig Aff. at ¶ 3, and Exhibit A). Thus, Mr. Anderson was obligated, or allegedly obligated, to pay the debt. See also Mund v. Mund, 252 Minn. 442, 90 N.W.2d 309, 313 (1958) (parents have an obligation to support their children); Moir v. Kowalkowski, 282 Minn. 243, 164 N.W.2d 69, 70 (1969) (the fact that the mother has custody does not terminate the obligation of the father to support his children).

Since Springer reasonably believed that Mr. Anderson was a co-obligor of the debt, Springer's phone calls to Mr. Anderson were permissible under the FDCPA. In the Complaint, Ms. Baker alleges that Springer' phone calls to Mr. Anderson violated 15 U.S.C. §§ 1692b(2), 1692c(b), 1692d, 1692e, & 1692f. (See Complaint ¶¶ 9-10). However, since Mr. Anderson was a co-obligor of the debt under Minnesota law and not a third party, all of these allegations must fail as a matter of law. See Mund v. Mund, 90 N.W.2d at, 313; Moir v. Kowalkowski, 164 N.W.2d at 70.

There are no allegations that Springer harassed, oppressed, or abused either Mr. Anderson or Ms. Baker in their attempts to collect the debt. Also, the FDCPA does not prohibit a debt collector from contacting an individual that is allegedly a co-obligor of

the debt.  See Bible v. Allied Interstate, Inc., 2001 WL 1618494, *4 (D.Minn. May 14, 2001) (Under the FDCPA a debt collector can speak to joint-obligors of a debt about the other's obligations); Pearce v. Rapid Check Collections, 738 F.Supp. 334, 337 (D.S.D. 1990) (debt collector did not impermissibly contact a third-party in violation of the FDCPA when the debt collector reasonably thought the party was partly liable for the debt and the debt collector did not attempt to embarrass the party).  Thus, Springer is entitled to summary judgment as a matter of law.

## CONCLUSION

Since Ms. Baker executed the Mutual Release releasing Springer, as KLT's agent, from any liability related to the underlying debt on her account, Springer respectfully requests that this Court dismiss Ms. Baker's Complaint against it with prejudice. Alternatively, this Court should find that Springer did not violate the FDCPA when it contacted Mr. Anderson because he was a co-obligor of the underlying debt under Minnesota law.  As a result, Springer alternatively requests that the Court grant summary judgment in its favor and against Ms. Baker and dismiss this action in its entirety with prejudice.

Dated: October 15, 2010         LOMMEN, ABDO, COLE, KING & STAGEBERG, P.A.

        BY s/ Barry A. O'Neil
        Barry A. O'Neil, I.D. No. 220875
        Nicholas A. Dolejsi, I.D. No. 0390112
        Attorneys for Defendant
        2000 IDS Center, 80 South 8th Street
        Minneapolis, MN  55402
        (612) 339-8131; FAX: (612) 339-8064