UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Sonya Baker,

   Plaintiff,

 v.

Springer, Inc.,

   Defendant.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 10-333 ADM/JJK

---

Trista M. Roy, Esq. and Thomas J. Lyons, Esq., Consumer Justice Center, P.A., Vadnais Heights, MN, for Plaintiff.

Barry A. O'Neil, Esq. and Nicholas Dolejsi, Esq., Lommen, Abdo, Cole, King & Stageberg, P.A., Minneapolis, MN, for Defendant.

---

## I. INTRODUCTION

On November 3, 2010, the undersigned United States District Judge heard oral argument on Defendant Springer, Inc.'s ("Springer") Motion for Judgment on the Pleadings or Alternatively for Summary Judgment [Docket No. 12]. For the reasons set forth below, Springer's Motion for summary judgment is granted.

## II. BACKGROUND[1]

This case arises from a debt dispute between Plaintiff Sonya Baker ("Baker") and KLT Kids School Age Care ("KLT") that arose prior to May 2008. Compl. [Docket No. 1] ¶ 5. KLT, a daycare provider, had provided daycare services for Baker's young son. Hannig Aff.

---

[1] On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).

[Docket No. 17] Ex. A.  KLT claimed that Baker owed KLT $520; Baker disputed the amount owed.  Id.  Subsequently, KLT placed Baker's debt with Springer, a debt collection company.  Compl. ¶ 6.  Springer began attempting to collect from Baker in April 2009.  Hannig Aff. Ex. A.  As part of Springer's collection efforts, Springer contacted Sean Anderson ("Anderson"), the father of Baker's son.  Hannig Aff. Ex. A; Roy Aff. [Docket No. 21] Ex. 1.  When Springer contacted Anderson, Springer revealed the existence of Baker's debt.  Springer also told Anderson that Springer did not "have a way to get in touch with Baker."  Compl. ¶ 10.  Springer's contact with Anderson, Baker alleges, constituted an impermissible contact with a third party in violation of the Fair Debt Collection Practices Act ("FDCPA").  See 15 U.S.C. § 1692c(b).  For its part, Springer argues that it reasonably believed Anderson was a co-obligor on the debt, and not a third party.

**A.  The Documents At Issue**

Baker relies on her "Enrollment Contract" with KLT.  She contends that a genuine issue exists as to whether Springer could have reasonably believed Anderson was a co-obligor because the Enrollment Contract lists Baker as the sole "Financially Responsible Person."  Roy Aff. Ex. 1.  Anderson is not listed in the document as a "Financially Responsible Person."  Id.

Significantly, Springer's file on Baker's debt with KLT does *not* include the Enrollment Contract.  See Hannig Aff. Ex. A.  Instead, Springer's file includes several documents indicating that Anderson would be jointly liable to KLT.  First, the file includes an "Account Placement Sheet" listing Anderson as Baker's spouse.  Hannig Aff. Ex. A.  Baker's son's last name is also "Anderson."  Second, Springer's file contains an envelope addressed "To the family of [child's name] Anderson" with KLT's return address.  Id.  Third, it appears that the envelope contained

a "Final Notice" from KLT, which also included in Springer's file. The Final Notice lists "Anderson/Baker" under "Family Name," and was addressed to "Family" – not to Baker individually. Id. Fourth, the file contains a March 10, 2009 document on KLT letterhead that lists Anderson as the account's "CoSponsor." Id. Finally, Springer's "Debtor Profile" for Baker lists Anderson as the second debtor. The Debtor Profile contains Anderson's name, address, phone number, and place of employment. Id.

### B. The State Court Litigation and Mutual Release

On December 18, 2009, as Springer's attempts to collect from Baker were unsuccessful, KLT filed suit against Baker in Minnesota state court. Roy Aff. Ex. 4. On February 5, 2010, while KLT's state court case was pending, Baker filed the Complaint in the instant matter against Springer. See generally Compl. Weeks later, in late February, KLT and Baker settled the state court case via a "Mutual Release." Roy Aff. Ex. 10.

Under the Mutual Release, Baker agreed to pay KLT $250 in settlement of the debt. Roy Aff. Ex. 10. KLT, for its part, agreed to amend Baker's credit report. Id. Baker and KLT also released each other from all claims related to the debt. Id. The Mutual Release states, in pertinent part:

> This agreement (sic) made by and between KLT Kids School Age Care and Sonja Baker (the "Parties"). The purpose of the Release is to set forth the release of all claims and obligations between the Parties with regard to any contracts entered into and/or services provided to Sonja Baker arising out of her account with KLT Kids School Age Care.
>
> . . . .
>
> For valuable consideration, the sum of $250.00, to be paid by Sonja Baker to KLT Kids School Age Care contemporaneously herewith, the Parties do mutually herein forever release and discharge the other

> party, their attorney's (sic), agents, successors and assigns from all accounts and obligations to KLT Kids School Age Care, now and hereafter, arising out of or in any way connected with KLT Kids School Age Care.

Id. The Mutual Release does not refer to the instant FDCPA litigation or include any reference to Springer. Id.

Springer argues for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), contending that Baker released Springer from any FDCPA claims via the Mutual Release. Alternatively, Springer argues for summary judgment based on evidence that Springer reasonably thought Anderson was jointly liable for Baker's debt.

### III. DISCUSSION

**A. The Mutual Release Does Not Preclude This Litigation**

Springer argues that the Mutual Release precludes the instant litigation and requires dismissal of the Complaint. See Fed. R. Civ. P. 12(c). A party is entitled to judgment on the pleadings under Federal Rule of Civil Procedure 12(c) only if the movant establishes that no material issue of fact remains to be resolved. Iowa Beef Processors, Inc. v. Amalgamated Meat Cutters & Butcher Workmen of North America, 627 F.2d 853, 855 (8th Cir. 1990); see 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1368 (3d ed. 2010). Springer is not entitled to dismissal under the Mutual Release because the language of the release is ambiguous as to whether Baker released Springer from FDCPA claims.

Springer points first to the broad language in the first paragraph of the Mutual Release purporting to "release all claims and obligations." However, this release is explicitly limited to those claims and obligations that are between the "Parties." The Mutual Release unambiguously defines the "Parties" as Baker and KLT. Springer is not mentioned. Therefore, the first

4

paragraph of the release does not release Springer from liability to Baker.

Next, Springer contends that, as KLT's agent, the Mutual Release's third paragraph shields Springer from liability to Baker. This paragraph is ambiguous. The relevant language states, "the Parties do mutually herein forever release and discharge the other party, their attorney's (sic), agents, successors and assigns from all accounts and obligations to [KLT], now and hereafter, arising out of or in any way connected with [KLT]." This language could be interpreted to mean that Baker releases KLT's attorneys, agents, successors and assigns from only those accounts and obligations *owed to KLT*. If the release is limited to only those obligations owed to KLT, Springer is not protected because Springer's FDCPA obligations are allegedly owed to *Baker* – not to KLT.

Interpreted differently, as Springer urges, the third paragraph could be read more broadly to release KLT's agents from all liability in any way connected to KLT. Armed with the knowledge that she had recently filed an FDCPA lawsuit against Springer, Baker would certainly have been expected to expressly preserve her federal claims against Springer when signing such a broad release related to the underlying debt. When seen from this perspective, a broader interpretation that shields Springer from liability seems equally supportable. However, as the Mutual Release is susceptible to more than one interpretation, it is ambiguous.

Further, as Baker contends, although the apostrophe in "attorney's" appears to be a typo, it is possible that the parties intended the apostrophe. If the apostrophe is intentional, the comma after the word "attorney's" is likely a typo. In that scenario, Baker argues, only "attorney's agents" would be released – not agents of the Parties. Again, the Mutual Release is ambiguous. Therefore, the Mutual Release, standing alone, cannot bar Baker's suit because a

genuine issue of fact remains as to whether Baker released Springer from FDCPA claims. Thus, the Court turns next to Springer's Motion for summary judgment.

### B. Standard of Review for Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig, 54 F.3d at 470. The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

### C. Baker's FDCPA Claims

Baker's Complaint asserts only one count – a claim for violations of the FDCPA stemming solely from Springer's sole telephone conversation with Anderson. There are no allegations that Springer harassed, oppressed, or abused either Baker or Anderson in its attempt to collect the debt.

The FDCPA regulates a debt collector's[2] communication with third parties, providing:

> Except as provided in section 1692b of this title, without the prior

---

[2] The parties agree that Baker incurred a "debt" as that term is defined under the FDCPA. See 15 U.S.C. § 1692(a)(5). The parties further agree that Baker is a "consumer" as defined by the FDCPA, and that Springer is a "debt collector" under the FDCPA. See 15 U.S.C. § 1692(a)(3), (6).

6

> consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c(b). Under the § 1692b exception, a debt collector may communicate with a third party for the purpose of acquiring location information about a consumer. 15 U.S.C. § 1692b(2). Still, a debt collector violates the FDCPA by informing even a properly-contacted third party that any debt is owed. 15 U.S.C. § 1692b(2).

The FDCPA is not violated, however, if the debt collector contacts an individual whom the debt collector "could reasonably have thought" was "at least partly liable for the money owed it." Pearce v. Rapid Check Collections, 738 F. Supp. 334, 337 (D.S.D. 1990) (finding debt collector did not violate § 1692c(b) because debt collector has "a legitimate reason" to contact an entity a debt collector thought was "possibly" jointly liable for a debt). Therefore, the FDCPA does not prohibit a debt collector from communicating with an individual reasonably alleged to be a co-obligor. See id.

### 1. Springer Could Reasonably Have Thought Anderson Was A Co-Obligor

Here, Springer has shown that there is no genuine issue of material fact as to whether it reasonably believed Anderson was liable for the debt Baker owed KLT. As stated above, Springer's file contains documents from KLT listing Anderson (albeit incorrectly) as Baker's spouse, listing Anderson as the account's co-sponsor, and listing the "Family Name" for the account as "Anderson/Baker." See Hannig Aff. Ex. A. The file also contains communications from KLT directed to "the family" of Baker and Anderson's son – not to Baker individually. Id.

Additionally, Springer's "Debtor Profile" for Baker listed Anderson as the second debtor, and contained Anderson's name, address, phone number, and place of employment. Id. All of this information necessarily would lead a reasonable jury to find Springer could reasonably have concluded Anderson was a co-obligor.

Baker's sole argument in response is that the KLT "Enrollment Contract" creates a genuine issue for trial. She contends that because the Enrollment Contract listed Baker as the sole "Financially Responsible Person," Springer could not have reasonably thought Baker and Anderson were co-obligors. However, Springer has provided unrebutted evidence that the Enrollment Contract was not in Springer's file on Baker. Hannig Aff. ¶ 2, Ex. A. Springer has also provided unrebutted evidence that Springer had no other information indicating Anderson was not jointly liable to KLT at the time Springer contacted Anderson. Hannig Aff. ¶¶ 3-4.

Furthermore, even though *KLT* arguably knew Anderson was not a co-obligor, "[c]ourts do not impute to debt collectors other information that may be in creditors' files – for example, that the debt has been paid or was bogus to start with." Randolph v. IBMS, Inc., 368 F.3d 726, 729 (7th Cir. 2004) ("[T]he statute asks what the debt collector knows, not what the creditor knows."); see also Smith v. Transworld Systems, Inc., 953 F.2d 1025, 1032 (6th Cir. 1992) (holding the FDCPA does not require debt collectors to conduct an independent investigation of debts referred for collection). Thus, KLT's knowledge that Anderson was not responsible for Baker's debt is not imputed to Springer.

Based on the information KLT gave Springer, there can be no genuine issue as to whether Springer could have reasonably thought that Anderson was a co-obligor on the debt. As the FDCPA does not prohibit a debt collector from communicating with co-obligors of a debt,

Springer's contact with Anderson did not violate the FDCPA.[3] See Bible v. Allied Interstate, Inc., 2001 WL 1618494, *3 (D. Minn. May 14, 2001) (determining debt collector was justified in speaking to joint-obligors about the other's obligations). In sum, Baker has failed to cite to specific facts creating a genuine issue for trial as to any of her FDCPA claims. As a result, Springer is entitled to summary judgment.

## IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion for Judgment on the Pleadings or Alternatively for Summary Judgment [Docket No. 12] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: November 30, 2010.

---

[3] In addition, the FDCPA defines a "consumer" as "any natural person obligated or *allegedly obligated* to pay any debt." 15 U.S.C. § 1692(a)(3) (emphasis added). Having found that Springer could have reasonably believed that Anderson was obligated to pay the debt to KLT, Anderson was "allegedly obligated" to pay the debt to KLT. Thus, Anderson is a consumer under the FDCPA – not a third party. As Anderson is not a third party, Baker's FDCPA claims must fail because the claims depend on prohibited contact with a third party.